UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X

RICHARD SNYDER,

        Plaintiff,

- against -

WELLS FARGO BANK, N.A. as successor to
WACHOVIA BANK, N.A.,

        Defendant.

------------------------------------------------------------- X

**OPINION AND ORDER**

11 Civ. 4496 (SAS)

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I. INTRODUCTION[1]

Richard Snyder, a retired businessman, brings this action against Wells Fargo Bank, N.A. ("Wells Fargo"), as successor to Wachovia Bank, N.A. ("Wachovia"), for Wachovia's alleged mismanagement of Snyder's personal and retirement investment accounts, resulting in losses to Snyder in excess of $2.5 million. There are currently two motions *in limine* before the Court, both brought by Wells Fargo. *First*, Wells Fargo seeks to preclude Snyder from: (1) materially

---

[1] Detailed factual background of the case is set forth in this Court's December 19, 2011 Opinion and Order granting and denying in part Wells Fargo's Motion to Compel Arbitration.

1

changing his deposition testimony using the errata sheet; (2) referencing in the Rebuttal Report of Sean P. Kelly, or in his testimony, documents not reviewed by Kelly in rendering his opinion;[2] and (3) introducing into evidence a letter to Snyder dated August 4, 2008 from Edwin Wachenheim, III of Greenhaven Associates, Inc. (the "Wachenheim Letter") referencing Snyder's "philosophy of preserving [his] capital."[3]  *Second*, Wells Fargo seeks to preclude, in whole or in part, the Expert Report of John J. Duval, Sr. insofar as it "adds up to an impermissible narrative."[4]

---

[2] Kelly is an investment advisor and consultant, and provides expert witness consulting for securities litigation attorneys.  *See* Kelly Curriculum Vitae, Ex. B to Expert Report of Sean P. Kelly.  Kelly testified that he has reviewed and authored damage reports in "well over 50 arbitrations and 500 cases" and done "analysis of documents from a number of different brokerage firms," which provides him with "familiarity with how other securities firms handled the valuation of transferring securities."  9/7/12 Deposition of Sean P. Kelly ("Kelly Dep.") at 39-44, Ex. 2 to Plaintiff's Memorandum of Law in Opposition to Defendant's Motion In Limine ("First Pl. Opp.")

[3] *See* Memorandum of Law in Support of Defendant's Motion *in Limine* ("First Def. Mem.").

[4] *See* Memorandum of Law in Support of Defendant's Motion *in Limine* Concerning the Expert Report of John J. Duval, Sr. ("Second Def. Mem."). Duval has twenty-two years of experience in the financial services industry including: approximately six years in management at the branch level and the district level; experience as a broker primarily in the retirement community; experience as a principal in Duval Asset Managment LLC, a Registered Investment Advisor; and experience as an Investigative Consultant for the Enforcement Division of the Securities and Exchange Commission from 2008-2009.  *See* Curriculum Vitae of John J. Duval, Sr., Ex. 2 to Declaration of Brian Kennedy in Support of Plaintiff's Opposition to Defendant's Motion in Limine Concerning the Expert Report of John J. Duval.  Duval has been retained in over one hundred and

For the following reasons Wells Fargo's motions are granted in part and denied in part.

## II. LEGAL STANDARD

The purpose of a motion *in limine* is to allow a court to rule on the admissibility of potential evidence in advance of trial.[5] A court will exclude evidence on a motion *in limine* only if the evidence is "clearly inadmissible on all potential grounds."[6] A court "considering a motion *in limine* may reserve judgment until trial, so that the motion is placed in the appropriate factual context."[7]

## III. CHANGES TO DEPOSITION TESTIMONY

### A. Applicable Law

Federal Rule of Civil Procedure 30(e) provides that "[o]n request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days . . . to review the transcript . . . and if there are changes in form or

---

fifty cases and has testified over forty-five times since 2001. *See id.*

[5]  *See Luce v. United States*, 469 U.S. 38, 40 n.2 (1984).

[6]  *United States v. Ozsusamlar*, 428 F. Supp. 2d 337, 340 (S.D.N.Y. 2002).

[7]  *In re Methyl Tertiary Butyl Ether("MTBE") Prods. Liab. Lit.*, 643 F. Supp. 2d 471, 476 (S.D.N.Y. 2009) (citation and quotation marks omitted).

substance, to sign a statement listing the changes and the reasons for them." This Court's Local Rules permit deposition transcripts to be changed "when the transcript is an incorrect reporting of what was said or when, although the transcript is correct, the witness's current recollection is different from what it was during the deposition."[8] "The original transcript remains part of the record of the litigation."[9]

### B.  Discussion

Plaintiff's counsel asserts that he requested the right to review Snyder's deposition transcript at the deposition, and timely reviewed and submitted the errata sheet.[10] The contested alteration on Snyder's errata sheet changes the line "They could not buy or sell" to "There was a termination of their discretion to buy and sell and transact transactions in my account at Wachovia upon the transfer of my account."[11] The reason is listed as "clarification."[12] This is consistent with

---

[8]   Hon. Shira A. Scheindlin Suggested Rules of Discovery Practice A(8).

[9]   *Id.*

[10]  *See* First Pl. Opp. at 4.

[11]  Errata Sheet to 5/22/12 Deposition of Richard Snyder, Ex. A to First Def. Mem.

[12]  *Id.*

Rule 30(e)'s allowances for changes in substance[13] and this Court's rules permitting changes when "the witness's current recollection is different from what it was during the deposition."[14] Defendant is, of course, free to reference the original deposition testimony during trial as it remains part of the record.[15]

### III. ADMISSIBILITY OF WACHENHEIM LETTER

#### A. Applicable Law

Rule 401 of the Federal Rules of Evidence defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 402 states that "[i]rrelevant evidence is not admissible." Rule 403 states that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."

#### B. Discussion

---

[13] *See also Podell v. Citicorp Diners Club, Inc.*, 112 F.3d 98, 103 (2d Cir. 1997) (holding that Rule 30(e) "places no limitations on the type of changes that may be made").

[14] Hon. Shira A. Scheindlin Suggested Rules of Discovery Practice A(8).

[15] *See id.* A*ccord Podell*, 112 F.3d at 103 (deponent was "not entitled to have his altered answers take the place of the original ones") (internal citation omitted). There is no suggestion that Snyder is attempting to expunge from the record his original answer, nor will he be permitted to do so.

5

Wells Fargo objects to plaintiff's use of the Wachenheim Letter "as proof of [Snyder's] contention that he informed Wachovia representatives that he wanted to pursue a capital preservation investment objective at Wachovia."[16] Snyder explains that Duval relied upon the Wachenheim Letter "in which Mr. Wachenheim confirmed that Plaintiff's assets would be transferred to Wachovia" and set forth plaintiff's investment objective at the time – a "philosophy of preserving (his) capital."[17] Snyder argues further that "[t]he subject of Plaintiff's investment objective is a central issue in this case, as it portends the timing and kind of an investment strategy that Wachovia should have implemented for Snyder, and forms the basis for Mr. Duval's expert opinion about whether Wachovia timely implemented a prudent investment strategy for Snyder."[18]

Wells Fargo is correct that, in the absence of any indication that Wachovia saw this letter, "the Wachenheim Letter is not probative as to whether Snyder ever communicated such alleged objective to Wachovia [as] there is no claim that the letter was ever provided to Wachovia."[19] The letter is therefore

---

[16]  First Def. Mem. at 7.

[17]  First Pl. Opp. at 7.

[18]  *Id.*

[19]  First Def. Mem. at 7.

inadmissible for the purpose of establishing "whether Wachovia timely implemented a prudent investment strategy for Snyder."[20]

## IV. EXPERT REPORTS

### A. Applicable Law

Federal Rule of Evidence 702 permits an expert witness[21] to

> testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Under Rule 702 and *Daubert* the district court must determine whether the proposed expert testimony "both rests on a reliable foundation and is relevant to the task at hand."[22] Trial judges are given "broad discretion" in determining the admissibility of expert testimony[23] and "'[v]igorous cross-examination,

---

[20] First Pl. Opp. at 7. To the extent that the letter is introduced for some other purpose, I reserve the question of admissibility for trial, including the hearsay issue. *See In re MTBE Prods. Liab. Lit.*, 643 F. Supp. 2d at 476.

[21] Defendant does not dispute that Kelly and Duval are qualified expert witnesses within the meaning of Rule 702.

[22] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993). *Accord Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-49 (1999).

[23] *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1042 (2d Cir. 1995). *Accord United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994) ("[T]he decision

presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'"[24]

However, the use of expert testimony must be "carefully circumscribed to assure that the expert does not usurp either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it."[25] Expert testimony is also inadmissible when it addresses "lay matters which [the trier of fact] is capable of understanding and deciding without the expert's help."[26]

Rule 703 states that "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed."[27]

---

of whether to admit expert testimony. . . should not be set aside unless manifestly erroneous.") (internal quotation and citation omitted).

 [24] *Amorgianos v. National R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir.2002) (quoting *Daubert*, 509 U.S. at 596 (citation omitted)).

 [25] *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991). *Accord United States v. Lumpkin*, 192 F.3d 280, 289 (2d Cir. 1999) (expert testimony may not usurp the role of the court in determining the applicable law).

 [26] *Andrews v. Metro N. Commuter R.R. Co.*, 882 F.2d 705, 708 (2d Cir. 1989).

 [27] Rule 703 provides further that "[i]f experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted."

Although an expert is permitted to support his opinions by reference to his experience, he must demonstrate that this "experience is a sufficient basis for" these opinions.[28]  Rule 704 states that "[a]n opinion is not objectionable just because it embraces an ultimate issue."

### B. Discussion: Kelly Report

Kelly's Rebuttal Report on behalf of Snyder opines that "[t]he Bates Group, LLC damage analysis in this instance uses transfer values that are inconsistent with industry standards and previous reports that I have analyzed from the Bates Group, LLC or other securities firms."[29]  Kelly's Report states that in reaching this conclusion he reviewed: "(A) the Bates Group, LLC expert witness report dated August 3, 2012; (B) various other Bates Group, LLC damage reports; and (C) statements from other established securities industry firms."[30]  Defendant requests that references to these documents be stricken from the Report (if it is offered into evidence) and that Kelly be precluded from referencing such documents at trial because he testified at his deposition that he had not reviewed

---

[28]     Fed. R. Evid. 702 Advisory Committee Note.

[29]     Rebuttal Report of Sean P. Kelly at 2, Ex. B to Defendant's Motion *in Limine*.

[30]     *Id.*

these documents directly in connection with preparing his Report.[31]

Kelly acknowledged in his deposition that his opinion in this case was based on his memory of reviewing Bates Group damages reports in "easily dozens" of other cases to see how their calculations comported with his, and his memory of "do[ing] analysis of documents from a number of different brokerage firms" which gave him "familiarity with how other firms handled the valuation of transferring securities."[32] The foundations for Kelly's conclusions are consistent with Rule 703, which permits an expert to support his opinions by reference to his experience as long as he demonstrates that this "experience is a sufficient basis for" these opinions.[33] Kelly's testimony that he has done "well over 50 arbitrations and 500 cases" involving damages reports, dozens of which involved the Bates Group, LLC, over the course of eleven years, and has analyzed documents from "Charles Schwab, Fidelity, Merrill Lynch, Banc of America, on and on" provides a sufficiently reliable foundation for his testimony regarding industry standards for use of transfer values.[34] Kelly has also "articulated how the specifics of his

---

[31]   First Def. Mem. at 7.

[32]   Kelly Dep. at 39-44.

[33]   Fed. R. Evid. 702 Advisory Committee Note.

[34]   *Accord Pension Comm. of Univ. of Montreal Pension Plan v. Banc of America Secs., LLC*, 691 F. Supp. 2d 448, 463 (S.D.N.Y. 2010) (holding that

experience led to his conclusions."[35]

If Kelly wishes to bolster his opinion with reference to specific Bates Group reports, then he may seek to introduce those reports.[36] However, he is not required to do so in order to render his testimony reliable. If defendant wishes to establish that the Kelly Report was based on Kelly's memory of reviewing these documents in the course of business rather than directly in connection with preparation of this report, it may do so during cross-examination.[37] The Kelly Report is admissible.

### C. Discussion: Duval Report

---

expert's testimony based on experience rather than existing data was sufficiently reliable where he had "worked for several different financial institutions, [and] conducted more than fifty due diligence reviews of hedge funds").

[35]   *Id.* at 464 (quotation omitted). *Accord Emig v. Electrolux Home Prods. Inc.*, No. 06 Civ. 4791, 2008 WL 4200988, at *8 (S.D.N.Y. Sept. 11, 2008) (holding that an expert witness had sufficiently demonstrated "a connection between his experience and the process he used and the conclusions he reached" by asserting that the methodology he employed "was the same one he utilized in the real world of American Industry when [he] evaluated the authored assembly instructions . . . ." (quotation marks and citations omitted)).

[36]   In fact, plaintiff responded to defendant's request to review the material referenced in Kelly's Rebuttal Report by providing a number of securities industry firm statements in redacted form, and a list of cases in which Kelly participated that involved Bates Group LLC damage reports. *See* 9/26/12 Letter from Brian Kennedy to Michael Manning, Ex. 3 to First Pl. Opp.

[37]   *See Amorgianos*, 303 F.3d at 267.

Plaintiff claims that "the Duval Report (and its exhibits) is a relevant and reliable expert opinion to consider securities industry custom and practices, and Wachovia's neglect to live up to such custom and practices."[38] In fact, the Duval Report is replete with inappropriate statements, and almost every one of the nine conclusions Duval ultimately draws, as well as the final conclusion that Wachovia "failed in its fiduciary duties to Snyder" are inadmissible under Rule 702 as either unreliable or irrelevant expert testimony. Rather than testifying as to "step-by-step practices" generally undertaken when an investment firm manages an individual investment account,[39] Duval sheds light on industry practices *only* by reference to the facts of this case. In so doing, he usurps the role of this Court in explaining the law, and usurps the role of the jury in applying the law to the facts

---

[38] Plantiff's Memorandum of Law in Opposition to Defendant's Motion *in Limine* Concerning the Expert Report of John J. Duval at 1-2. *See also id.* at 8-9 (stating that the Duval report opines about issues of fact and, in certain instances such as whether Wachovia had a fiduciary duty, about mixed issues of fact and law, and addresses important elements of Plaintiff's claims concerning securities industry custom and practices, transactions in Snyder's investment account, and the liability of Wachovia. . . .").

[39] *See, e.g.*, *Bilzerian*, 926 F.2d at 1294 (admitting "general background on federal securities regulation and the filing requirements of Schedule 13D, which [the expert] *presented by referring to a blank form*") (emphasis added); *Marx & Co., Inc. v. Diners' Club Inc.*, 550 F.2d 505, 508-09 (2d Cir. 1977) (expert in securities regulation "was competent to explain to the jury the step-by-step practices ordinarily followed by lawyers and corporations in shepherding a registration statement through the SEC.").

of this case and evaluating the credibility and testimony of the witnesses.

### 1. The Report Contains an Impermissible Narrative

The first four pages of Duval's expert report consist largely of rehashing and characterizing testimony regarding the "circumstances regarding [Snyder's] signing on with Wachovia . . . ."[40] Duval summarizes what was said at meetings between Snyder and Wachovia representatives,[41] and, moreover, states conclusions without any reference to his purported expertise such as that Wachovia's General Assets Presentation ("GAP") "missed the mark," "failed Snyder's request to hedge," and was "inappropriate,[42] and states as fact that Snyder "rejected" the GAP.[43] These first four pages are an impermissible narrative amounting to little more than a "a summation from the witness stand,"[44] and

---

[40] 8/6/12 Expert Report of John J. Duval ("Duval Report") at 3, Ex. A to Memorandum of Law in Support of Defendant's Motion *in Limine* Concerning the Expert Report of John J. Duval, Sr.

[41] *See id.* at 3-4.

[42] *Id.* at 4

[43] *Id.*

[44] *Lippe v. Bairnco Corp.*, 288 B.R. 678, 688 (S.D.N.Y. 2003). *See also Liberty Media Corp. v. Vivendi Universal, S.A.*, No. 03 Civ. 2175, 2012 WL 1097351, at *2 (S.D.N.Y. Apr. 2, 2012) (holding that an expert "will not be permitted to exhaustively recount all of the facts of the case" but rather must "draw on the facts only as necessary—and in as concise a manner as possible—to support his opinion").

address "lay matters which [the trier of fact] is capable of understanding and deciding without the expert's help."[45]

### 2. Duval's Report Impermissibly Addresses Credibility and Motivations of the Witnesses

It is well established that "[e]xpert testimony is not relevant if the expert is offering a personal evaluation of the testimony and credibility of others or the motivations of the parties."[46] Furthermore, "[w]hen an expert undertakes to tell the jury what result to reach, this does not aid the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's."[47] This goes well beyond the expert's "limited role of providing the groundwork in the form of an

---

[45] *Liberty Media*, 2012 WL 1097351, at *1 (quoting *Andrews*, 882 F.2d at 708 (alteration in original)).

[46] *Lippe*, 288 B.R. at 678 (citing *United States v. Scop*, 846 F.2d 135, 142 (2d Cir. 1988), *rev'd in part on other grounds*, 856 F.2d 5 (2d Cir. 1988)). *Accord Lumpkin*, 192 F.3d at 289 ("Fundamental to the role of juror as trier of fact is the task of assessing witness credibility."); *GST Telecomms., Inc. v. Irwin*, 192 F.R.D. 109, 110–11 (S.D.N.Y. 2000) ("[I]t would be inappropriate to consider the experts' personal assessments of the credibility of the situations involved, the sufficiency of the measures utilized in considering the business plans being pursued, . . . and the impact of self interested conduct and the significance thereof."); *Kidder, Peabody & Co. v. IAG Int'l Acceptance Group, N.V.*, 14 F. Supp. 2d 391 (S.D.N.Y. 1998), *aff'd* 205 F.3d 1323 (2d Cir. 1999) (precluding expert testimony of law professor who sought to opine that party had acted reasonably and in good faith, holding that these were questions for the jury).

[47] *Duncan*, 42 F.3d at 101.

opinion to enable the jury to make its own informed determination."[48]

Duval contravenes these restrictions throughout his report, most blatantly with his conclusion that "[Anthony Gerard] Rogers' deposition answers are not credible and his testimony, by an large, should be discounted."[49] Other examples include: (1) characterizing Rogers' testimony "that an orderly liquidation would be over time to manage the tax burden" as "spurious;"[50] (2) concluding that Rogers' "excuses for not taking protective action in Snyder's account on August 8, 2008, are unacceptable both from an industry practice standpoint and are, simply put, disingenuous;"[51] and (3) declaring Rogers' testimony that "what we knew was that puts had become cost prohibitive, so that makes a collar strategy cost prohibitive" to be "false."[52]

### 3. Duval's Report Opines on "Lay Matters"

In addition to impermissibly evaluating the credibility of witnesses,

---

[48] *Id.*

[49] Duval Report at 25. Duval's Report states that "Anthony Rogers was the primary contact with Snyder and responsible for directing his Wachovia 'team' handling the Snyder account." *Id.* at 5.

[50] *Id.* at 7.

[51] *Id.* at 10. Notably, Duval spends comparatively little time setting forth the industry standard which he claims was violated.

[52] *Id.* at 14.

the portion of Duval's report identifying inaccuracies and omissions in Rogers' deposition testimony about his prior registrations and employment also draws conclusions that a jury is more than capable of understanding on its own. For example, Duval points out that: (1) Rogers' testimony that there was a $3,000 settlement in 1995 regarding a customer complaint was inconsistent with his FINRA registration, which reflects a $6,000 settlement in 2001; (2) there were omissions in Rogers' discussion of his employment history; (3) Rogers' deposition answer of "I don't know" implies confusion about licensing and registration; and (4) testimony regarding phone calls on a certain date are unlikely as Snyder was still in Europe, en route to the United States.[53]

### 4. Duval's Report Draws Numerous Legal Conclusions

"[W]hile an expert 'may opine on an issue of fact within the jury's province,' an expert 'may not give testimony stating ultimate legal conclusions based on those facts.'"[54] The Second Circuit defined the scope of this limitation

---

[53] *Id.* at 5-7.

[54] *Muller-Paisner v. TIAA*, No. 03 Civ. 6265, 2012 WL 3205583, at *8 (S.D.N.Y., Aug. 9, 2012) (holding that a declaration was inadmissible inasmuch as it stated an opinion regarding the ultimate question to be decided – whether the facts show that a fiduciary duty existed and was breached) (quoting *Bilzerian*, 926 F.2d at 1294). *Accord Hygh v. Jacobs,* 961 F.2d 359, 363 (2d Cir. 1992) ("This circuit is in accord with other circuits in requiring exclusion of expert testimony that expresses a legal conclusion.") (citing cases); *Pension Comm. of Univ. of Montreal*, 691 F. Supp. 2d at 475 (expert opinion on defendant's contractual duties

explaining that where an expert "did not give his opinion as to whether [defendants'] actions violated the securities laws" but rather provided "general background on federal securities regulation . . . , which he presented by referring to a blank form," the opinion was admissible.[55]  In contrast, "an expert's repeated statements that defendants' conduct established a manipulative and fraudulent scheme within the meaning of the securities laws exceeded the permissible scope of opinion testimony."[56]

Duval's Report falls well outside the scope of permissible testimony. It draws numerous legal conclusions with regard to the specific facts of the case at hand.[57]  For example, the section on Rogers begins with the statement that "Mr.

---

"is inadmissible because it improperly usurps the role of the trial judge in instructing the jury as to the applicable law and the role of the jury in applying the law to the facts before it"); *United States v. Brooks*, No. 06 Cr. 550, 2010 WL 291769, at *4 (E.D.N.Y. Jan. 11, 2010) ("Thus, although a corporate governance expert can explain what a CEO does, and what a fiduciary duty is, the expert cannot opine as to whether a specific CEO's acts breached any fiduciary duty.").

[55] *Bilzerian*, 926 F.2d at 1294.

[56] *Id.* (citing *Scop*, 846 F.2d at 139).

[57] The Second Circuit noted in *Bilzerian* that although the expert "did answer a few questions based on *hypothetical* facts, the use of hypotheticals was first introduced by the defense on cross examination" and, moreover "[t]he mere use of hypotheticals does not usurp the jury's function of applying the law of to the facts of the case." *Id.*  The court suggested by implication that applying the law directly to the facts of the instant case would clearly violate the limitation on expert testimony.

Case 1:11-cv-04496-SAS-GWG   Document 51   Filed 10/15/12   Page 18 of 20

Rogers' deposition is instructional, because it belies Wachovia's defense in this dispute."[58] It concludes further that "[i]f Rogers and Wachovia did not have cost data before Snyder opened the accounts with Wachovia, then both Rogers and Wachovia were remiss and negligent."[59] In his "Conclusions and Opinions," Duval states that "Wachovia was negligent and imprudent in not obtaining an Options Consent Form on July 31, 2008 when Snyder signed the new account forms and agreements."[60] In addition, Duval opines on the ultimate issue in the case – whether Wachovia "failed to timely implement any kind of prudent investment strategy" for Snyder – by concluding that "Wachovia should have immediately begun selling some or all of Snyder's stocks, bought tax-free bonds, and collared the stocks not sold" and that "Wachovia did not protect Snyder and Snyder suffered damages as a result."[61] Duval concludes with the statement that "Wachovia failed in its fiduciary duties to Snyder in not protecting Snyder's assets and is accountable for the resultant damages."[62] This testimony epitomizes the type that Rule 702 prohibits because it usurps the role of the judge, the jury, and

---

[58]   Duval Report at 5.

[59]   *Id.* at 7.

[60]   *Id.* at 23.

[61]   *Id.* at 23-24.

[62]   *Id.* at 25.

the adversary system generally. Because Duval's Report is so ridden with improper statements and opinions, I decline to identify the limited portions that might qualify as expert testimony. The Duval Report is excluded in full.

## V.   CONCLUSION

For the foregoing reasons, Wells Fargo's motions *in limine* are granted in part and denied in part as follows: (1) Snyder's amendment to his deposition testimony is admissible; (2) Kelly's Rebuttal Report is admissible; (3) the Wachenheim Letter is inadmissible for the purposes of establishing Wachovia's knowledge or duties with respect to Snyder's account; and (4) Duval's Expert Report is precluded.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:   October 12, 2012
         New York, New York

19

**- Appearances -**

**For Plaintiff:**

Brian O. Kennedy, Esq.
87 Walker Street
New York, NY 10013
(212) 687-0099

**For Defendant:**

Michael P. Manning, Esq.
Joseph A. Vallo, Esq.
Greenberg Traurig, LLP
200 Park Avenue
New York, NY 10166
(212) 801-9200