UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

RICHARD SNYDER,

          **Plaintiff,**

   - against -

WELLS FARGO BANK, N.A. as successor
to WACHOVIA BANK, N.A.,

          **Defendant.**

------------------------------------------------------X

**OPINION AND ORDER**

**11 Civ. 4496 (SAS)**



SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.    INTRODUCTION

      Plaintiff Richard Snyder brought suit against Wells Fargo Bank, N.A.,

as successor in interest to Wachovia Bank, N.A. ("Wachovia") for, *inter alia*,

breach of contract and breach of fiduciary duty.  Snyder claimed to have suffered

investment losses as a result of Wachovia's failure to exercise reasonable care,

skill, and caution in making investment decisions regarding his Investment

Management Agreement ("IMA") with Wachovia.  After a seven-day trial, the jury

awarded Snyder $7,437.71 in damages for breach of contract[1] and $724,999.20 in

damages for breach of fiduciary duty.  The jury found that the date on which

---

[1]    That amount is composed of the monthly transaction fees charged by
Wachovia in September ($7,102.71) and October ($335.00).  *See* Trial Transcript
("Tr.") at 1202.

Wachovia breached its contract with Snyder was September 9, 2008.  The jury further found that Wachovia breached its fiduciary duty to Snyder on September 27, 2008, and that Wachovia's fiduciary obligation to Snyder ended on October 6, 2008.

Wachovia now moves pursuant to Federal Rule of Civil Procedure 50(b) ("Rule 50(b)") for judgment as a matter of law setting aside the jury's verdict on Plaintiff's breach of fiduciary duty claim.  Plaintiff cross-moves to alter or amend the judgment, pursuant to Federal Rule of Civil Procedure 59(e) ("Rule 59(e)"), to add statutory interest.  For the following reasons, both motions are granted.

## II.   BACKGROUND

### A.   Stipulated Facts and Trial Evidence[2]

On June 24, 2008, Snyder first met with Wachovia representatives, including investment advisor Anthony Rogers, at his home where they discussed Snyder's investment objectives and financial circumstances.  Snyder met with Rogers and other Wachovia representatives a second time on July 31, 2008, at which time he signed documents to open the IMA.  Snyder testified that he told Rogers that he wanted Wachovia to immediately hedge or "collar" his investments

---

[2]      Unless otherwise noted, the facts in this section have been taken from the Statement of Undisputed Facts for JPTO, Section 5 (Docket Entry # 52).

to protect them from a market downturn and eventually diversify his portfolio.[3] Snyder's assets were transferred from his Greenhaven Account and delivered into the IMA on August 8, 2008.  Wachovia deemed the assets in "good order" for the transaction of business on August 26, 2008.

On September 15, 2008, Lehman Brothers' Holding Inc. filed for Chapter 11 bankruptcy, precipitating a severe market downturn.  In response, Snyder sent an e-mail to Rogers, dated September 15, 2008, in which he stated: "i want to know now did you hedge the greenhaven money as you were told to do on many occasions."[4]  At trial, Snyder maintained that he first learned that Wachovia did not hedge or collar his IMA investments on September 15, 2008.[5]  After the market closed on September 17, 2008, Snyder sent an e-mail to Rogers and others directing Wachovia to sell all of his financial stocks in its possession.[6]  Rogers confirmed Snyder's instructions and the placement of sell orders for those stocks.

---

[3]     *See* Tr. at 84-85.

[4]     9/15/08 Email from R. Snyder to Wachovia, Ex. I to the 12/20/12 Affidavit of Michael P. Manning, Defendant's counsel ("Manning Aff.").

[5]     *See* Tr. at 250:4-8.

[6]     *See* 9/17/08 Email from R. Snyder to Wachovia, Ex. J to Manning Aff.

On September 26, 2008, Snyder directed Wachovia to transfer all cash in the IMA to the Bank of New York ("BoNY").[7]  Wachovia completed the transfer that same day.[8]  The next day, a Saturday, Snyder sent the following e-mail to Tom Roberts of BoNY in which Rogers was copied:

> TOM PLS PREPARE CUSTODOL [sic] ACS TO IMMEDIATELY RECEIVE ALL REMAINING ASSETS HELD BY WACHOVIA WHICH SCHOULD [sic] BE PRIMARILY SECURITIES. . . . ALSO WOULD NEUBERGER AND WACHOVIA ALSO CALL AND CONFIRM INSTRUCTIONS AND TIMING.[9]

Rogers responded with an e-mail to Snyder later that day stating: "We will deliver the assets to BoNY when they notify us they are ready to receive.  The timing of this transfer will be determined solely by BoNY.  Please let us know asap if you have any further instructions for us in the interim."[10]  Snyder did not provide any further instructions to Wachovia in response to Rogers' e-mail.  He testified at trial that he had no idea what Rogers meant about "any further instructions."[11]

---

[7]    *See* 9/26/08 Email from R. Snyder to Wachovia, Ex. K to Manning Aff.

[8]    Tr. at 794:17-795:4; 801:25-802:1; Defendant's Trial Exhibit EE.

[9]    9/26/08 Email from R. Snyder to Wachovia, Ex. K to Manning Aff.

[10]   9/27/08 Email from Wachovia to R. Snyder, Ex. K to Manning Aff.

[11]   Tr. at 144:17-144:18.

Rogers testified at trial that he considered the September 27, 2008 e-mail in which he was copied to be a termination of Wachovia's investment discretion.[12]  Rogers considered Snyder's lack of response to his e-mail of that same day to be approval for maintaining the status quo of the IMA portfolio pending delivery to BoNY.[13]  Rogers testified that he instructed Wachovia to transact no further activity in the IMA pending transfer.[14]  None of Snyder's investments were hedged or collared at any time they were held by Wachovia.[15]

Snyder signed transfer instructions for BoNY on October 1, 2008.  BoNY delivered Snyder's transfer instructions to Wachovia on October 3, 2008.  Most of Snyder's stocks were delivered to BoNY on October 9, 2008 and two

---

[12]     *See id.* at 797-98, 885.

[13]     *See id.* at 800.

[14]     *See id.* at 887-89.  Wachovia opened an additional covered call option in Snyder's account on September 29, 2008, which Rogers testified was likely the result of an "open order for a contract, and it was probably filled when the market opened on Monday morning before they could . . . close it out or check or respond."  *Id.* at 800.  *Accord id.* at 494 (testimony of Wachovia employee Anthony Montione).

[15]     From August to early September 2008, Wachovia did not engage in any investment activity in the IMA whatsoever.  *See* Complaint ¶ 40.  During this period, Wachovia did not re-allocate or diversify Snyder's investment portfolio, nor did it purchase or sell any securities in the IMA.  *See id.* ¶ 41.  In mid to late September 2008, Wachovia's only investment activity in the IMA account was the sale of "a handful of call options," *id.* ¶ 42, and the sale of several financial stocks at Snyder's request.  *See* 9/17/08 E-mail, Ex. J to Manning Aff.

remaining stocks were delivered on October 15, 2008.

**B.    Duties Under the IMA**

The IMA states, in pertinent part, as follows:

[Wachovia] shall have sole investment discretion in connection with the investment management of the Account, provided however that such discretion shall be exercised in accordance with the investment objectives determined after [Wachovia's] consultation with [Snyder]. [Wachovia] will make investment decisions in accordance with its understanding of [Snyder's] risk tolerance and purpose in investing, as described in the Investment Policy Statement, but [Wachovia] does not guarantee a positive return or any specific return. [Wachovia] will exercise reasonable care, skill and caution in making investment decisions on behalf of [Snyder]. . . . [Snyder] understands and acknowledges that investments are inherently risky and may increase or decrease in value and that [Snyder] may lose principal.[16]

**C.    Closing Arguments**

In his closing statement, plaintiff's counsel stated:

[Defense counsel] would like to characterize [the September 27th e-mail] as a termination of authority, some sort of termination of investment discretion, some sort of termination of trading authority. . . .  But the word termination, you can look for it, but you're not going to find it because there is no discussion by Mr. Snyder to terminate trading authority.  There is no instruction to terminate investment discretion, okay.  The e-mail from Snyder goes to Tom Roberts for Bank of New York: Tom,

---

[16]    IMA, Art. I, Ex. 1 to the Declaration of Brian Kennedy in Opposition to Defendant's Motion ("Kennedy Decl.").

please prepare custodial account to *immediately receive* all remaining assets.

Prepare.   Tom, please prepare.   Not you're terminated, right? Not, do it now.  It says, please prepare.  And, then, Rogers writes back, same day, September 27th: Dick, we will coordinate delivery with Tom on Monday.   We'll deliver the assets to Bank of New York when they notify us they are ready to receive.  The timing of this transfer will be determined solely by Bank of New York.

So, in other words, Mr. Rogers is telling Snyder that they have to wait for the Bank of New York to transfer the assets.  Okay, does that mean that Wachovia should now just sit on its hands and back off and not do what it's obligated to do under the agreement?   And under its fiduciary obligation? No.[17]

Counsel for defendant stated in his closing:

Wachovia doesn't believe that plaintiff has even tried to prove the elements of a breach of fiduciary duty claim. There is no evidence going to any actions that relate to undivided and unqualified loyalty.  There is no evidence going to making truthful and complete disclosures.  There is no evidence going to obtaining an improper advantage at Mr. Snyder's expense . . . .  We submit that there is no breach of fiduciary duty here.[18]

With regard to the September 27th e-mail, defense counsel stated: "Wachovia

submits that the investment discretion ended on September 27th, as a matter of

---

[17]     Tr. at 1147-1148.

[18]     *Id.* at 1116-1117.

7

securities industry practice. . . ."[19]

### D.     The Jury Charge

The jury was charged, in pertinent part, as follows:

Mr. Snyder's second claim is that Wachovia breached its fiduciary duty to Mr. Snyder.  A fiduciary duty means a duty to act in good faith and in Mr. Snyder's best interests, to act with undivided and unqualified loyalty, to make truthful and complete disclosures to Mr. Snyder, and not to obtain an improper advantage at Mr. Snyder's expense.  I instruct you as a matter of law that Wachovia had a fiduciary duty to Mr. Snyder during the time it was an investment manager with discretionary authority over Mr. Snyder's account.[20]

Mr. Snyder claims that Wachovia did not act in good faith or in his best interests by failing to timely implement an investment strategy to preserve and protect plaintiff's assets and to reallocate and diversify his investment portfolio.  Defendant denies breaching its fiduciary duty to Mr. Snyder.

Under New York law, when a contract contemplates the exercise of discretion, good faith requires that the party given discretion not act arbitrarily or irrationally in

---

[19]     *Id.* at 1117.

[20]     At a pre-trial conference, I addressed the issue of whether a fiduciary duty existed independent of the IMA.  I ruled that "[b]ecause the fiduciary duty arises out of the nature of the relationship rather than the terms of the contract itself, the cause of action for breach of fiduciary duty would not merely restate contract claims but, rather, would constitute a breach of duty arising out of the relationship created by contract, which is nonetheless independent of such contract."  Transcript of 11/5/12 Telephone Conference, Ex. N to Manning Aff., at 7.  I therefore permitted Snyder's claims for breach of fiduciary duty to proceed.

exercising that discretion.  An act is arbitrary if it is without sound basis in reason and is taken without regard to the facts.  An act is irrational if it is unreasonable, foolish, illogical, or absurd.  This is the standard you should use to determine whether Wachovia acted in good faith.[21]

\* \* \*

[T]he damages period will begin on whatever date you find Wachovia breached its fiduciary duty to Mr. Snyder.  The end of the damages period is the date on which Wachovia's fiduciary duty to Mr. Snyder ended.[22]

## III.   LEGAL STANDARDS

### A.   Judgment as a Matter of Law

A Rule 50(b) motion for judgment as a matter of law may be granted only if "a reasonable jury would not have a legally sufficient evidentiary basis to find for the [non-movant] on that issue."[23]  "[A] district court can grant the motion only if after viewing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in favor of the non-moving party, it finds that there is insufficient evidence to support the verdict."[24]  "[A] court cannot assess the weight of conflicting evidence, pass on the credibility of the witnesses,

---

[21]      Tr. at 1179-1180.

[22]      *Id.* at 1181.

[23]      *Cameron v. City of New York*, 598 F.3d 50, 59 (2d Cir. 2010) (alteration in original) (quoting Fed. R. Civ. P. 50(a)(1)).

[24]      *Fabri v. United Techs. Int'l, Inc.*, 387 F.3d 109, 119 (2d Cir. 2004) (citing *Tolbert v. Queens Coll.*, 242 F.3d 58, 70 (2d Cir. 2001)).

or substitute its judgment for that of the jury."[25]  Rather, in reviewing the evidence the court must "'disregard all evidence favorable to the moving party that the jury is not required to believe [and] give credence to the evidence favoring the non[-]movant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'"[26]  In sum, judgment as a matter of law is appropriate where "there exists such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or the evidence in favor of the movant is so overwhelming that reasonable and fair minded [persons] could not arrive at a verdict against [it]."[27]

### B.      Federal Rule of Civil Procedure 59(e)

A motion to alter or amend under Rule 59(e) is appropriate only if the moving party establishes: (1) an intervening change in controlling law; (2) the availability of new evidence that was previously unavailable; or (3) the need to

---

[25]      *Smith v. Lightning Bolt Productions, Inc.*, 861 F.2d 363, 367 (2d Cir. 1988) (internal quotation omitted).

[26]      *Tolbert*, 242 F.3d at (quoting *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 151 (2000)).

[27]      *Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 567 (2d Cir. 2011) (quotations marks and citations omitted, alterations in original).

correct clear error or prevent manifest injustice.[28]  Whether to grant a Rule 59(e)

motion to alter or amend judgment is "committed to the sound discretion of the

district judge and will not be overturned on appeal absent an abuse of discretion."[29]

## IV.   DISCUSSION

### A.   Judgment as a Matter of Law

Wachovia makes two arguments why "the evidence as to breach of

fiduciary duty during the period specified by the jury . . . is so deficient that no

reasonable finder of fact could validly find for plaintiff on that claim."[30]  *First*,

plaintiff "neither pleaded nor offered any evidence at trial in proof of a proposition

that Wachovia first breached a fiduciary duty on [September 27, 2008].[31]  *Second*,

"[p]laintiff identified no conduct of Wachovia during this applicable period that

was arbitrary or irrational."[32]  In addition, Wachovia argues that Plaintiff did not

introduce any evidence of a breach of a legal duty independent of the contract

---

[28]     *See Virgin Atl. Airways. Ltd. v. National Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992).

[29]     *McCarthy v. Manson*, 714 F.2d 234, 237 (2d Cir. 1983).

[30]     Memorandum of Law in Support of Defendant's Motion for Judgment as a Matter of Law ("Def. Mem.") at 2.

[31]     *Id.*

[32]     *Id.*

claim.[33]

Snyder alleged that Wachovia "breached its fiduciary duty to Plaintiff by failing to prudently manage, monitor, and supervise Plaintiff's accounts, acting in a manner inconsistent with its obligation, and exposing Plaintiff to risks to which Plaintiff should not have been subjected."[34]  Snyder argues that September 27, 2008 was a reasonable date for Wachovia to begin hedging Snyder's investments based on the Court's instruction that it was for the fact-finders to determine what constitutes a reasonable time period in which to implement Snyder's investment strategy.[35]

Although Wachovia owed Snyder a fiduciary duty as a matter of law, in the absence of any evidence that Wachovia did something *beyond* failing to implement a hedging strategy – the precise basis for the contract claim – the breach of fiduciary duty is entirely duplicative of the contract claim in contravention of

---

[33]    *See id.* at 24.

[34]    Complaint ¶ 69.

[35]    *See* Plaintiff's Memorandum of Law in Opposition to Defendant's Post-Verdict Motion for Judgment as a Matter of Law on the Second Claim for Breach of Fiduciary Duty at 12 ("[T]he jury also found that a reasonable time period for Wachovia to start to implement Snyder's investment strategy was by September 27, 2008, and that Wachovia's fiduciary duty to Snyder ended on October 6, 2008.").  *See also id.* at 14 ("[T]he jury could have found and apparently did find that a reasonable date for Wachovia to begin its performance on the hedging strategy was September 27, 2008.").

New York law.[36]  Moreover, as set forth below, no evidence supports the contention that the day on which Snyder ordered his account transferred was the day on which Wachovia should have implemented a hedging strategy, or that anything Wachovia did on that day was arbitrary or irrational.

Rogers' belief that his investment discretion was terminated by the September 27th e-mail and the propriety of his instruction to Wachovia that no further action should be taken was supported by testimony from Dennis Pape, Wachovia's expert witness.  Pape testified that when an investment manager receives a communication from a client that the client is transferring his account to another firm, any existing discretionary authority on the part of the manager and/or firm is considered terminated under applicable industry practice.[37]  Pape explained that the practical basis for this industry rule is that notice of an account transfer is indicative of a lack of confidence with the investment manager, concerns with performance, and/or some other dispute.[38]  Thus, additional transactions made after

---

[36]    *See Carvel Corp. v. Noonan*, 350 F.3d 6, 16 (2d Cir. 2003) ( "Where the plaintiff and defendant are parties to a contract, and the plaintiff seeks to hold the defendant liable in tort, the plaintiff must prove that the defendant breached a duty 'independent' of its duties under the contract.") (citing *Clark-Fitzpatrick, Inc. v. Long Island Rail Road Co.*, 70 N.Y.2d 382, 389 (1987)).

[37]    *See* Tr. at 972.

[38]    *See id.*

notice of the transfer could potentially open the door to litigation and/or delay the transfer process.[39]  Pape further testified that upon receipt of a communication that an account is being transferred, the investment manager should contact the client and ask what, if any, steps the client wants taken in the interim.[40]  Wachovia did so and received no response from Snyder.

While Snyder testified that *he* did not perceive discretion to be terminated as of that date, plaintiff's expert John Duval did not refute Pape's testimony that Wachovia's interpretation was standard within the industry and that Wachovia complied with industry practice regarding steps to be taken after notice of an account transfer.  Duval testified as to numerous things that Wachovia could and should have done as Snyder's investment advisor,[41] but he offered no testimony from which a jury could have determined that Wachovia should have *begun* doing things such as planning an investment policy or implementing a new investment policy on the day that Snyder instructed his account to be transferred.

Even assuming that discretionary authority did not terminate on September 27, there is no rational basis to conclude that that date was the *first* day

---

[39]     *See id.* at 973.

[40]     *See id.*

[41]     *See id.* at 644 (testimony of John Duval discussing alternative hedging strategies).

14

on which Wachovia began to act arbitrarily or irrationally in exercising the

discretion conferred upon it by the IMA.  Wachovia did not act with regard to

Snyder's stated investment objective when the assets were first turned over to it in

August 2008, it did not act when Lehman Brothers declared bankruptcy on

September 15, 2008, and it did not act on September 27, 2008, the date when

Snyder instructed BoNY to prepare to immediately receive all remaining assets

held by Wachovia.[42]   Furthermore, because Snyder does not distinguish between

the basis for the breach of contract claim – failure to implement a hedging strategy

– and the breach of fiduciary duty claim there is no rational basis on which to find

that one duty was breached on September 9 and the other on September 27.

   In sum, there is no evidence that Wachovia breached a fiduciary duty

independent of its duties under the contract on the day Snyder directed BoNY to

prepare to receive the accounts or at any point afterward.  Thus, the jury's

determination that Wachovia breached its fiduciary duty to Snyder on September

27, 2008, is without evidentiary support and appears to have been the basis of

---

[42]   Wachovia also notes that September 27, 2008 fell on a Saturday.  *See*
Def. Mem. at 17.  Given that the financial markets were closed, there was no way
in which Wachovia could have begun to  hedge Snyder's stocks on that date.
However, the jury presumably was not aware of this fact and, had there been
evidence to support the selection of that date, it would be reasonable to assume that
this date encompassed all days prior to the transfer of Snyder's account to BoNY
on which Wachovia *could* hedge Snyder's stocks.

conjecture or confusion rather than any theory of the case put forth by plaintiff.[43]

For these reasons, the jury's verdict on the breach of fiduciary duty claim must be

set aside as a matter of law.

### B.     Adding Interest to the Jury Verdict

Snyder moves to amend the Judgment to add interest at the statutory

rate of nine percent (9%) to which he claims he is entitled under New York Civil

Procedure Law & Rules ("NY CPLR") § 5001.   Plaintiff makes this request

pursuant to Rule 59(e).  Given that I have set aside the jury's verdict on the breach

of fiduciary duty claim, the only remaining claim is the breach of contract claim,

for which the jury awarded $7,437.71 in damages.

NY CPLR § 5001(a) requires prejudgment interest to be added to any

recovery for breach of contract and NY CPLR § 5001(b) requires that prejudgment

interest be computed from the "earliest ascertainable date the cause of action

existed."  "Rule 59(e) . . . is a proper vehicle through which to bring a motion to

amend a judgment to add prejudgment interest 'where the judgment has failed to

include an amount of interest that the governing law requires to be automatically

---

[43]     There is also no evidentiary support for the jury's finding that the
fiduciary duty Wachovia owed to Snyder ended on October 6, 2008.  Most of the
stock in the IMA account was transferred to BoNY on October 9, 2008; the
remaining two stocks were transferred on October 15, 2008.

included.'"[44]  Accordingly, the Judgment is hereby amended to add statutory

interest at the rate of nine percent from the earliest date of the breach of contract,

September 9, 2008, through the date of the amended Judgment.[45]

## IV.   CONCLUSION

For the foregoing reasons, Defendant's motion for judgment as a

matter of law is granted as is Plaintiff's motion to amend the Judgment.[46]  The

Clerk of the Court is directed to close these motions (Docket Entries # 82 and 79).

The Clerk of the Court is further directed to prepare an amended Judgment

incorporating the rulings set forth herein.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:       New York, New York
             April 17, 2013

---

[44]      *Uni-Rty Corp. v. Guangdong Bldg. Fin., Inc.*, No. 95 Civ. 9432, 2013
WL 150214, at *3 (S.D.N.Y. Jan. 11, 2013)  (quoting *In re Frigitemp Corp.*, 781
F.2d 324, 327 (2d Cir. 1986)).

[45]      The Judgment is also amended to reflect the vacatur of the jury's
award on Plaintiff's breach of fiduciary duty claim.

[46]      Pursuant to Rule 50(d), plaintiff, as the losing party, may bring a
motion for a new trial pursuant to Rule 59 within twenty-eight days of entry of
judgment as a matter of law.

**- Appearances -**

**For Plaintiff:**

Brian Kennedy, Esq.
87 Walker Street, 2nd Floor
New York, NY 10013
(212) 687-0099

**For Defendant:**

Michael P. Manning, Esq.
Greenberg Traurig, LLP
200 Park Avenue
New York, NY 10166
(212) 801-9200

19